Your Honors, my name is Stephen Rubenstein, representing Women in Film. I, too, was surprised that there was no asterisk on the sheet about the amount of time given. This is a one-issue case. The appeal involves a single issue, really, about the statute of limitations and whether or not it applies. The Court, in its order, implied that it was troubled by applying a statute of limitations because Women in Film did not tell the Court how it would use the money if it was the successful party. You're talking about statute of limitations by treating it as a contract instead of a gift. That's correct. That is correct. But let's suppose we get past that, too. It's a gift, and the question is whether there was, without any genuine issue, breaches of the representations made to get the gift or the conditions on the gift. Well, from our point of view, the word gift itself actually raises a semantic question. The only published case I was able to find, and to my knowledge no one else found any other, was Earle v. Sachs. That's the classic expression of a gift case. In that case, a man gave a woman a fur coat. He did not attach any conditions to the gift. Which case? This is called Earle v. Sachs. The man gave the woman the fur coat. He did not condition the gift on anything. It was an outright manual transfer. It was full delivery. It was a completed act. It was a gift. But it turned out that at the time the gift was made, a false representation had been made to the husband about the cost of the coat. Had he known the truth, he wouldn't have given the gift. The man wanted to give the full coat to the woman. He wanted to give a complete gift. As it turned out, though, he had a monetary limitation he was not going to go over. He was willing to spend X. The recipient of the coat, who wanted it very badly, was looking at something that cost X plus Y. So she said to Saks Fifth Avenue, I'll pay the difference, but don't tell the donor. Well, the donor can't get satisfaction out of giving a woman a gift if behind his back the woman's kicking in some of the money for it. All right. But isn't the theory behind as I understand the complaint in this case, although later on there was some talk about conditional gifts, the complaint seems to really be based on an Earl v. Saks theory of a misrepresentation. In other words, that your client, the gift was made based on a mistake of fact that was created by your client. And that's different, it seems to me, than a conditional gift. Well, the distinction here, and it's a very important one, is this. To your benefit, I should say. I mean, it seems to me, then, if that's the theory, then the complaint also goes on correctly, I think, to allege that your client knew at the time that they weren't going to do what they said they were going to do. And that element does never seem to have been found by the district judge. That's correct. And in fact, every one of the factual contentions were disputed by declarations that were submitted in opposition to the motion. So there would otherwise be a genuine controversy over every one of the issues that does not support the granting of the motion for summary judgment. However, and this is the important part, and the reason I brought up Earl v. Saks is to distinguish it from what happened here. In Earl v. Saks, the man gave the coat and found out later that there was a present existing fact that had been false, which was, how much does the coat cost? The difference here is, something was tendered to women in film, and the party said in the complaint that because of the representations, they were giving the money with conditions attached. At that point, the reliance is on the conditions. The conditions are about future events that may or may not happen. Those are not facts. Those are hopes. Well, it could be facts. I mean, there is, you know, a established set of law in California, which is usually fraud in the inducement, but it could be, in this instance, innocent, I suppose, if you, your client knew at the time they made these representations that they weren't going to do what they said they were going to do. That could be the basis for a misrepresentation, a misrepresentation of your intent. But that's what's in the complaint, but doesn't seem to me to be in the findings. That's correct. There's no evidence that there was a fraudulent inducement into giving the gift. Well, it doesn't have to be fraudulent inducement, but it has to be a statement of a fact known to be false when stated. Whether it's a present fact or a future fact, I don't know that that matters. Or it is a present fact. It's a present fact regarding present intent. All right. Well, you're right that the Court never made a finding about that, and it's also true that what the intent was, was disputed with evidence in opposition to the motion. The third thing that should not be lost sight of is that Women in Film went ahead and did open a bank account. Women in Film did go ahead and found another donor that gave $10,000. What concerned the lower court is that there was no follow-through thereafter. Well, if you look at the evidence most favorably to Women in Film, you could not possibly infer that there was a fraudulent intent from the get-go since the initial steps had been taken. Well, they're not claiming a fraudulent intent. They're claiming, as I understand it, essentially a mistake of fact. Well, that's another problem for them, because mistake is defined in California under a statute. I thought the theory was a little different from that. I thought the theory was a breach of a condition, that the gift was subject to two conditions, that it be used in an endowment fund, and it wasn't, and that other monies be raised, substantial monies be raised, and that they weren't. Now, aside from whether there's an issue of fact about whether it was put in an endowment fund, I thought the issue was those were conditions of the gift. And the question is, is there a genuine issue of fact about whether the gift was conditioned on those two things? I will agree with the Court that your understanding of the case is the same as mine. The point being made is this. Money was given with strings, and the strings were alleged to have failed. If there were three strings, three conditions, not two, the failure of any one of them would constitute a breach of the conditions. So the question is, what happens if you hand over the money? It's like I give you $10,000 if you don't smoke for the next five years, but if you smoke cigarette over the next five years, you have to give it back. That's what I understood. That's exactly right. So the question is, from the time you find out that the person smoked, how long do you have to bring a lawsuit to get the money back? Well, the answer is clear under California law, because the statute of limitations is not limited just to the words oral contract. It says any obligation. So if you have an obligation to give money back because the condition failed, that still falls within the scope of the statute. Oh, so you're saying obligation doesn't just mean contract. It means any kind of obligation that was an oral obligation. There's a two-year period to do something about it. Now, what's important that was established by judicial admissions of the Foundation is this. One of the conditions was that money would be donated by this Entertainment Industry Council by the first quarter of the year 2000. It's important to know that the president of the Foundation, Lorene Arbus, at the same time was a member of the board of directors of women in film throughout the year 2000. That's in the record. Therefore, Ms. Arbus in her dual role had actual and not even constructive notice that the first condition didn't happen by the end of the first quarter in 2000. So you're saying if these were conditions of the gift, as the plaintiffs claim, then the conditions failed to be met and the donor knew that the conditions had not been met more than two years before suit was filed. That's absolutely correct. And it's uncontroverted in the record. But the district court didn't base its decision on that. Well, it didn't, but this court can because the record shows that there are judicial admissions and actual admissions by the Foundation as to the facts we're now talking about. Therefore, as a matter of law, this court can find that the reliance was on the conditions themselves, that the Foundation knew that the first condition didn't happen at a particular moment in time, but waited more than two years to bring in action. And this is summary judgment. So basically, de novo review, we can do whatever we think the record says. And you should because it would be totally inefficient to send it down and have a court do the same thing that has to happen. But you're saying this is like my cigarette smoking hypothetical if the lawsuit wasn't filed till 10 years after the donor had seen the guy smoking the cigarette. That's correct. There has to be a cutoff. But this case is actually even better for women in film than the hypothetical because when you say to someone, I'll give you money if you don't smoke, the not smoking part of it is called a legal detriment. And that's why it's a... Well, what's consideration? If you say, I'll give you money if you don't smoke, well, the way the cases talk about it, they would say, well, it's not a benefit to the donor. It's a benefit to the donee not smoking. But here, the Foundation's in the business of giving away money. So in truth, they furthered their own mission by giving away the money. They got a benefit. They benefited by following their own mission statement and giving the money in the first place. I say that that distinction makes it even more in the realm of a contract that was breached when the first condition didn't happen and more than two years went by before anyone did anything about it. The problem with the word mistake is it's an ambiguous term. In the dictionary sense of the word, which Justice Kleinfeld referred to in another one of the matters today, anyone that goes into an agreement or understanding with someone that doesn't work out, of course you say it was a mistake to do it in the first place. So in that lay parlance, everything that fails is a mistake. But what the court held was that there was essentially an innocent misrepresentation. The problem with the court saying that is this. In order to know whether or not it was a misrepresentation, there had to be a current fact on the table when the gift was made that was false. Kagan. Which could have been their intent at the time, but he didn't find that. He didn't find that. And in fact, as I said, there's evidence in the record that Wythe did start the performance. So that is a complete contradiction to no intent to perform at all. I don't know why we're talking about findings. Wasn't it summary judgment? It was a summary judgment. There's no such thing as a finding effect on summary judgment. Well, the judge wrote up his argument for why he did what he did. So that's clues into the Court's thinking. Or what I guess what I'm saying is he didn't he, in applying the theory of innocent misrepresentation, did not recognize that there was an element of contemporaneous fact involved. He seemed to wander from what happened at the time the gift was made to what happened afterwards. That's absolutely right. What happened afterwards could be analyzed under a condition theory, but that isn't really what the district court did, it seems to me. Right. The district court, what he did is took a retroactive look backwards to find out if there was follow-through. That's not what the law says. And I wanted to get to the definition of mistake under California law. It has to be a mistake about an existing fact or a past fact. So I guess you're talking about something that may or may not happen in the future. That is not a fact. That's a hope. It's an expectation. But until the time passes, we don't know what the fact will be. That can't form the basis of a mutual or unilateral mistake. That looks like anyone that goes into a sort of contractual relationship, whether you call it promissory estoppel, which is a substitute for consideration or anything else. So ultimately, in terms of, to get back to limitations question then, your position seems to be that a conditional, violation of a conditional gift, even assuming it's a gift and without having to turn it into a contract, is governed by the two-year limitations. Absolutely. Because the condition is something that there's a moment in time where you mark that the condition happened or didn't happen. That has to trigger a time period to take action. The only statute that could apply is one that talks about not just oral contracts, but it talks about obligations. This is an obligation to do something that wasn't done. That falls within a two-year statute of limitations. I did submit a 28J case reference because I think it summarizes the import of what's happening here, and I'd like to be able to inform the Court of what that is, which is simply this. The United States Supreme Court made it clear in 1944 in a case called Order of Railroad Telegraphers v. Railway Express Agency that statutes of limitation are not bad things. They're not things people hide behind so they can get away with something. There's a very important public policy behind them. Quoting, Statutes of limitations and their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim, it is unjust not to put the adversary on notice, to defend within the period of limitations, and that the right to be free of stale claims in time comes to prevail over the right to prosecute them. That is a very strong public policy to apply the statute of limitations if it is indeed applicable. One more thing that I want to emphasize to the Court, bringing back the Court's concern that Wythe didn't tell the Court what it would do with the money, and I wrote in my papers, which I'm sure you have read, that the money would be used for any lawful purpose of a nonprofit organization, which Wythe is. But I want to make something come to the attention of the Court, which is this. Ms. Arbus made a big point of the fact that she was a big shot at women in film for a long period of time, including the year 2000, which was the year in which the failure of the first condition happened in the first quarter. She is the president of the foundation that's designed to give money away to worthy purposes. It raises a question which is outside the record, but the inference is not outside the record. If the ultimate goal of giving the money is to benefit the organization and its fund succeeded, the use of that money, which helps sustain the organization, which chases dollars all the time in order to survive, gives education to a large community of people, almost 2,500 people in the Southern California chapter alone. That still at least is consistent with what has to be the underlying goal of Ms. Arbus when she had the money given. So you have to wonder why after two years was it that she first had a problem over the use or nonuse or whatever of the money. That suggests that she had a beef and then raised the issue to punish the organization. The point is, the reason there's a statute of limitations is, and this is the important thing, we know that if you use the statute that I've referred in my papers, which is two years, that regards oral obligations, like this case. We also know that if we were talking in a strict contract sense, it's a four-year statute of limitations. Well, why would it be four years for a written contract and two years for an oral something? Well, since we know why there's a statute of limitations from the United States Supreme Court, the answer is clear, because if it was done orally, memories can fade, evidence can be lost, or your point of view about the organization to whom you gave the money in the first place could have changed. The oral nature of the alleged conditions requires that the two-year period of the statute, which has no ambiguity, be applied here. Thank you. Thank you, counsel. Counsel, I'm wrong that this case from the beginning in the complaint, and as decided by the judge, and as discussed in your brief, was not on a conditions theory. It was on a mistake of fact theory. It was on both theories. I read your complaint, and the only one I got clear in the complaint was that false statements were made of fact to induce the gift. That's right. That's the only thing that's in the complaint. The only thing that's in your brief. The only thing the judge decided. It also refers to a mistake. Yes, right. A complaint. So it's either a mistake or a mistake. That's the only mistake it describes. Excuse me? The mistake is the representations that were made. Right. But that's nothing about a condition. That's different. It doesn't say that it's conditional, and once the condition's not met, you had to give the money back. Well, the district court found that there were misrepresentations of a mistake. Let me clarify why I'm asking this. It looks to me like you're on the horns of a dilemma here. Either you're saying this was a conditional gift, in which case you've got a statute of limitations problem, or you're saying there were false statements of fact that induced the gift, in which case you've got a problem because the statements were not fact. They're of future intentions, and there's no evidence that those future intentions were not honestly intended at the time. Well, let me take an opportunity to climb off the horns. First, there was statements that were made that were relied upon. The statements were false or mistaken. In either case, we were enforced. What do you mean by they were false? The district court certainly did not find that or did not see the record as establishing, because he didn't seem to think you had to, that they were false when made. He seemed to wander between what was said and what later happened, as opposed to whether what was said at the time represented falsely the intentions of women in film. But your complaint recognizes that there had to be a finding as to what the intent was at the time it was made. Does this record establish anything about the intent at the time the representations were made? I think it does. I think it does. Such as what? There were representations made that we believe were conditions. In fact, we said they were conditions. And the representations that were made were, first, that the monies would be additional monies, substantial additional monies would be found, and that the endowment fund would be set up. And how could that be false when made? Because there was no intention to do that. How do we know that? Because what is there in the record that shows there was no intention to raise substantial additional money? There was no intention to put it in an endowment. And there was no intention to get the, I don't know, a million or ten million or whatever it was. Well, you can look at the facts subsequent to the gift in order to determine whether or not they intended what they said they would do. I don't see that as logical. I mean, people are constantly intending to do better than they wind up doing. Well, it could be circumstantial evidence of intent. I think what my colleagues are suggesting is that that would require a finding of fact, and the judge took all the facts as established here. Exactly. And it would have to go to trial for that. Well, I don't think he took all the facts as established. All it is is circumstantial evidence. Well, you look later. They never did raise, actually, they raised ten. But you say they never did get the ten million or the much money or that's not a real endowment. Well, that's circumstantial evidence that might prevent summary judgment against your side, but I don't see how it prevents the other side from getting their trial. Well, I think they don't get the trial because what you have here is a situation where there was frustration of the purpose of the gift. The gift was made with a purpose of stimulating and creating. That's a different theory. That's a contract doctrine, not a gift doctrine. No, I don't think so. You're talking about the mistake now. Yes. There was a mistake. Okay. What was the mistake, and whose mistake was it? The mistake was telling us that they would raise additional funds and that they would create an endowment fund. It's not a mistake. You're using the word to mean something different from what it ordinarily means. That's misrepresentation. But it can also be misrepresentation. There's no doubt about that, and we pledged that. It may be misrepresentation or intentional misrepresentation, but it's not mistake. Mistake is I give you this stamp in the belief that it's worth 50 cents, and actually it's worth $50,000. I gave you the wrong stamp by mistake. That's mistake. Okay. Well, the mistake here was I gave you this money because I thought, and you told me, you were going to set up an endowment fund and you were also going to collect additional substantial additional funds. But as far as we know from this record, there is nothing to establish that they didn't intend to do it at the time that you gave them the money. Well, we do have statements in their answers to interrogatories in which they say they aren't doing anything to raise money. That's different. People breach contracts all the time. Well, no, I don't agree that this is a contract. But that doesn't matter. What I'm saying is in the context of contracts, people say they're going to do things and they don't do them, and that doesn't prove that they were lying at the time they said they were intending to do them. Well, but if the plan here was to raise more money and then they don't do anything and they say they don't do anything, isn't that proof enough? In the world of charity, people have high hopes all the time. I hope to get a million dollars to benefit victims of muscular dystrophy, and then I ask all my friends for money and all I raise is $2,000. That doesn't show I was lying when I said I hoped to get a million dollars. It wasn't a question of high hopes here. They led Ms. Arbus down the road by telling her that, look, not only are we going to raise more money, substantially more money, but we've got this outfit standing out there who's going to put in $10 million. Let me just clarify. The main thing I was trying to clarify is that this was your theory, that there isn't an alternative theory, because I don't see that it's in the complaint or anywhere else, of a conditional gift, that what happened later somehow voided the gift as opposed to what happened at the time it was made. Because, as Judge Kleinfeld says, if that is your theory, you're probably running into a limitations period. I assume that's why you wrote the complaint the way you did to begin with. Well, we didn't – we don't see this as a limitations problem. We see that the 4-year catch-all that's in 343 is what applies here. If gift was to be covered by either the 2-year rule on contracts or the 4-year rule on contracts, the legislature would have said that. They didn't use the word gift. A gift is very different. And to say that somehow or other we got consideration because we gave away the money doesn't make any sense. There was no consideration. But why isn't a condition on a gift an obligation that gives rise to the 2-year agreement? Isn't that the ultimate legal question, which hasn't been discussed anywhere here? No, it hasn't been discussed. And my response to that is that the context of 339 is a contract context. If it's a promise to obligation or something or liability. What words are you referring to in this case? Contract. What does it say? It says contract, obligation, and liability. Right. That's what it says. So why isn't a condition an obligation? Something that you have to do because X happened, you have to do Y. Whether or not it's not a promise, but why isn't it an obligation? Well, you can say that about a tort situation as well. If you're supposed to, you have a duty. And if you breach the duty, I mean, is that an obligation? But the tort, we know that torts are not covered by that provision. And I think that gifts are not covered by that provision either. They would have said it. Instead, they leave a caption. Well, torts are not covered by that provision because there's a different statute for torts. That's right. The way statutes are construed is that a more specific statute supersedes an inference from the more general statute that would conflict with it. Okay? I can live with that. The point that I'm making is that if the legislature intended to subject a gift to the same rules that it has for contracts, they would have said so. Your theory really is that if there were a conditional gift, I give you $5,000 if you don't smoke for the next five years, and I see you smoking in one year, I cancel you in ten years to get my $5,000 back. Not in ten years. Why not? Maybe you have four years. Four years because that's the catch-all. That's the catch-all. I see. And, you know, in this business about, you know, memories being lost, we're talking about two years between the time that we asked, less than two years between the time that we asked for the money to be refunded and the refusal. Actually, that happened very quickly. We asked for the money back two years, I guess it was about two years, after we had given the money. When you ask for it really doesn't stop the statute from running. It's when you sue that stops the statute from running. Well, that's right. But that's still inside the two-year period. I'm saying it begins running when you ask and you refuse to ask for the money back. You ask to rescind, and that's what happened here. Wasn't the time run from when the condition was broken? It was August of 2000. I think you're saying the condition was broken right from the get-go, aren't you? Well, the condition was broken before we asked for our money back. That's true. Now, when exactly, that's not established in the record. And this business about, you know, Ms. Arbus being a big shot with the beef is not in the record either. But it sort of reveals why this matter has gone so far. Counsel, let me ask you a question. I don't have your motion papers here. But this came up on a motion for partial summary judgment on the gift count. The district court seemed to go off on this was a misrepresentation and it was material. And so whether it was innocent or intentional was not really relevant because it was a material misrepresentation that induced the gift. Did you also argue in those papers that this gift was given on the mistaken, the argument you're articulating now, that the gift was given on the mistaken belief that it would be used as seed money to build this endowment fund and that there'd be, was that in the papers in front of the judge? Yes, it was. And certainly I would direct the Court's attention to Ms. Arbus' declaration, which says exactly that. So you argued the mistake theory, that it was their mistake. Yes. It has to be their mistake. Yes. Just as in Judge Kleinfeld's example, the donor's mistake is to the value of the stamp. Right. Here, the donee made a mistake that they passed on to us, that they could do these things that they said they could do or that they would do. Now you're saying it's the donee's mistake. Doesn't it have to be the donor's mistake? Well, look, we believe what we withhold. So that can be characterized as reliance, mistaken, or otherwise. Otherwise, we wouldn't have put the money in. You're using all these words, and you're mostly using contract words like mistake, reliance, frustration of purpose. And I don't understand why you're using contract words in a gift context. Well, I'm not sure what other language we can use. We're brought up with that kind of language, and now we suddenly shift to a gift. The gift here was made the purpose of the gift was totally frustrated, just like in Earl V. Sacks. I don't think that matters. It matters if the gift is fraudulently induced. Like if I tell you I'm the son you never knew you had. Remember that girl back when you were in college? Here I am. And you say, oh, my gosh, I had no idea. And now you're too old for child support. Let me give you $50,000. And I was lying the whole time. That's a fraudulently induced gift. I have to give the $50,000 back. But you're trying to apply the concept of a fraudulently induced gift to statements, we'll put it in an endowment, we'll raise other money, we'll get the million dollars. And it seems to me that the only way it could fit in the box you're trying to put it is if they knew from the get-go that was just a lot of big talk to get the $100,000. And right away, what they plan to do is just spend $100,000 on the ordinary operating expenses of women in film or on good things for the people that ran women in film or something like that. Well, certainly it could be characterized as a misrepresentation, but it also could be characterized as a mistake on their part that they could actually do these things that they said that they led this artist to believe that they would do. Either way, the purpose of the gift was frustrated, and the donor ought to be able to get the gift back when the purpose is frustrated, just like in Earl V. Sacks. That doesn't make sense to me. I give my – suppose my daughter's going with a boy I don't like, and I give her $5,000 to go on a grand tour of Europe in the hopes that she'll forget the boy. My purpose is to get her to forget the boy. He gets his own $5,000 and goes to Europe and keeps her company the whole time. My purpose is frustrated, but I can't get my five grand back. Well, you should be able to. It makes sense. And you should be able to hear. There's no law that entitles me to my 5,000 back. I gave it to my daughter to go on a grand tour, and she went. But you didn't tell her that she had to stay away from the boy. Here, what we're saying is we gave the $100,000, and we said, you've got to set this up. Well, they said to us that they would set it up. One of the things about the endowment issue is that they did not take the money and spend it on their daily events. It's still sitting there, as I understand it. Well, they've actually – they've actually given us the money back. But at the time that the case came down, money was sitting there, including the interest. In fact, what are we doing here? Including – no. Well, they gave it back because there was a judgment. Oh. Okay. I'm not – you know, I'm not trying to insinuate anything else. I also wouldn't know why we're here. But the point that I'm making is that the – even the $1,000 in interest was never taken out. I mean, the endowment fund is designed for – Well, because you're in the middle of litigation for that. Well, but they say that. I'm not sure you can even infer from what happened with that regard that they weren't going to do it sooner or later. Well, but saying that because they're in litigation doesn't explain why they have to do it. What they're saying is the condition, whatever it was, had no time attached to it. So how do we know that they weren't going to do it? Well, because – oh, two years had elapsed and nothing had been done. And they – and they don't – there was no evidence whatsoever that they intended to do it somewhere down the road. They never made use of the funds that were being earned by the 100,000. Well, current interest rates, you really couldn't. An endowment means you invest the principal and you give the interest out to the worthy goals each year. If all you've got is $100,000 at current rates, you get maybe $3,000 a year to give to women in film. Well – Not very much. You might wait until you get some more money. Well, but they ought to be taking it out. They have expenses every year. That was the whole idea. The endowment fund isn't supposed to collect interest on interest. I mean, none of this was done in a way to satisfy what we thought was going to happen. And in Earl B. Sachs, one of the key issues is the frustration of purpose. And that's what happened here. And I don't think we need to focus on the elements of a contract action because gifts are different. Right. But if we don't focus on the elements of a contract action, then we have to focus on the elements of the rescission of a gift action, which, as I understand it, depends on there having been a misrepresentation made at the time of the gift. Or a mistake. Or a mistake. Or a frustration of purpose. Where are you getting that from? From Earl B. Sachs. Well, Earl B. Sachs depended on the fact that there was a frustration because of a misrepresentation, not that there was a frustration standing alone by itself. He wasn't told anything. He apparently. He was told that it was $4,000, not that it was $5,000. He wasn't told anything more about that. Well, he was told. But the point is that. It cost some amount of money different than what it cost. He was told he was buying a mink coat for $4,000. Right. A gift to his wife as a gift. Well, it wasn't his wife, I can tell. Well, his girlfriend as a gift. And it wasn't. It wasn't true. It was not true. And it wasn't true here that they were going to create an endowment. That was a present lie. Excuse me? That was a present lie. At the moment that the salesman said, I'm giving it to you for $4,000, he was lying to him. He wasn't giving it to him for $4,000. He was giving it to him for $5,000 for the girlfriend to pay the other $1,000. That's right. But here. But they went on beyond that. The California Supreme Court is saying that the purpose for which he was paying to give a gift, and the entire amount that he was paying was presumably to pay for this fur coat. And that wasn't true. Well, the lie went to the purpose. Well, okay. But the point is that they, the Court. It was a present lie. Well, but the Court doesn't say that it has to be a present lie. All it has to be is a frustration of purpose. And that's what you have there. You have there and you have it here. If Your Honor is looking for that, it's at 609. Thanks. I don't see it. It looks as though what you're looking at is the string site to the comment from the restatement. It's a quotation from the restatement. Yes. Yes. Substantial frustration of the donor's purpose entitles them to restitution. Right. But the mistake that they're referring to is explained earlier in the paragraph as one in the inducement of the gift. The gift has to be induced by fraud, material representation, or a mistake as to a basic fact. And that is Miss Arbus's declaration that was included before the court below and is in the record here. That she was induced by those statements that were not true or, at the very least, were mistaken. Now, what I'm suggesting is that we should not create a... It doesn't say that frustration of the donor's purpose independently of fraud, misrepresentation, or mistake as to a basic fact when the gift was given requires restitution of the gift. No. It says just what it says. And what I'm suggesting is that that statement is broad enough to cover the situation we have here. So what it means is if there was not fraud, material misrepresentation, or mistake when the gift was made, but ultimately the purpose of the gift was frustrated, then under this language, the donee does not have to give it back to the donor. No. The donee does have to give it back. That's why I don't see where you're... The purpose of the gift is frustrated. The gift has to be returned. You're just using the last half of the sentence without the first half of the sentence. Titles him to restitution. I don't think I'm misreading it. A mistake which is the language you're missing. A mistake which entails a substantial frustration of the donor's purpose and titles him to restitution. And then when you try to find out what mistake means, you have to look up at the first sentence of the paragraph. Well, that's in this case. But they're not saying that this theory or this rule applies just to this case and to no others. I think they're setting down a rule for gifts in general. And I think that's a wise thing to do. Gifts should not be made more complicated than necessary. What happened here, they say, is that the boyfriend was actively misled as to a material element, which was that he was giving the fur coat to his girlfriend. Yes, that's that case. That's true. Which all takes us back to what Judge Berzon was asking about at the outset. Which was? What evidence is there that would preclude a jury from concluding anything other than that the women in film misled the Goldenson Association from the at the time of the giving of the gift. Okay. They misled the Goldenson Association with respect to the creation of an endowment fund and with respect to obtaining further funds. They have admitted that they are not attempting to obtain further funds. The $10,000, there's no evidence that that was put into the endowment fund. I mean, there isn't. They did nothing after they received it, which to me is strong evidence, conclusive evidence that they didn't have any intention to do what they promised. And the other way to look at it is that these are conditions. It's strong evidence, but it certainly isn't conclusive evidence. That's the problem. That's your problem. Well, okay. Thank you, Counsel. Thank you. I think we've run over the time. I think we've covered it, frankly. Thank you, Counsel. Isabel and Leonard Goldenson Association v. Women in Film is submitted. We'll hear Castro v. Galazza. Thank you.
judges: Kleinfeld, Wardlaw,berzon